UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Craig Cunningham, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. 5:23-cv-00910 |
| v. | CLASS ACTION COMPLAINT |
| Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, and Biltmore Law Group, PLLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

## Nature of this Action

1. Craig Cunningham ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Watts Guerra, LLP, Watts Guerra, LLC (together, "Watts Guerra"), Law Office of Douglas Boxer ("Boxer"), Henson Fuerst, P.A. ("Henson"), and Biltmore Law Group, PLLC ("Biltmore") (collectively, "Defendants") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls they placed, or caused to be placed, to Plaintiff's cellular telephone number, without prior express consent.

## Parties

3. Plaintiff is a natural person who at all relevant times resided in Plano, Texas.

4. Watts Guerra is a national law firm that practices, among other things, mass tort litigation.

5. Watts Guerra has offices in California, Texas and Puerto Rico, but is headquartered

1

in San Antonio, Texas.

6.  Boxer is a California law firm headquartered in Chico, California.

7.  Henson is a North Carolina law firm that practices, among other things, mass tort litigation.

8.  Henson is headquartered in Rocky Mount, North Carolina.

9.  Biltmore, an Arizona professional limited liability company, is an Arizona law firm that practices, among other things, mass tort litigation.

10. Biltmore is headquartered in Phoenix, Arizona.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

12. Venue is proper before this Court under both 28 U.S.C. § 1391(b)(1) and (b)(2) as Watts Guerra is headquartered in this district and a significant portion of the events giving rise to this action occurred in this district.

13. In particular, upon information and belief, Defendants' decision to engage in their telemarketing campaign originated in this district, some of the subject communications originated in this district, and Plaintiff was subsequently directed to transact with Defendants in this district.

## Factual Allegations

14. Plaintiff is—and has been since at least 2021—the regular and sole user of his cellular telephone number—(980) 280-XXXX.

15. In late 2021, Plaintiff began receiving a series of calls, delivered using an artificial or prerecorded voice, from a rotating series of phone numbers for the purpose of soliciting Plaintiff to submit a claim regarding the pending Zantac mass tort litigation.

16. In response, in April, 2022, Plaintiff filed a complaint against Watts Guerra, titled *Cunningham v. Watts Guerra, LLP et al.*, Case No. 5:22-cv-363 (W.D. Tex.).

17. In or around December 2022 and continuing through April 2023, Plaintiff again began receiving a series of calls, delivered using an artificial or prerecorded voice, from a rotating series of phone numbers, including (615)-340-0490, (615)-340-0518, and (786)-677-7870.

18. Plaintiff did not recognize the phone numbers associated with these calls.

19. Each of these calls was made for the purpose of soliciting Plaintiff to submit a claim regarding the pending Camp Lejeune water contamination mass tort litigation.

20. Plaintiff did not previously inquire regarding submitting a claim for injury related to Camp Lejeune.

21. Plaintiff is not, and was not, interested in submitting a claim for injury related to Camp Lejeune.

22. Plaintiff did not serve at Camp Lejeune and did not live in the vicinity of Camp Lejeune during the relevant time period.

23. Plaintiff estimates that he has received in excess of two dozen calls from these phone numbers related to Camp Lejeune claims.

24. On at least two occasions, including twice on December 16, 2022, upon answering these telephone calls, Plaintiff was greeted with artificial or prerecorded voice messages, requiring him to respond to various prompts in order to be re-routed to live human beings, who, upon information and good faith belief, were consistently located in overseas call centers.

25. When Plaintiff attempted to obtain the identity of the callers or the companies they were calling on behalf of, the callers initially refused to provide identifying information.

26. In late January 2023, in response to these Camp Lejeune messages, Plaintiff spoke

to a live human associated with the subject calls, and that caller refused to identify the business or entity associated with the calls, conditioning the disclosure of that information on the submission of a Camp Lejeune claim.

27. As a result, Plaintiff provided a pseudonym—Gregory Jones—and stated that he had a valid Camp Lejeune claim, in order to identify the entity responsible for the calls at issue.

28. In response, the caller coached Plaintiff on answers he must provide to generate a qualifying Camp Lejeune claim, and Plaintiff agreed to do so solely for the purpose of identifying the entity responsible for the calls at issue.

29. Specifically, the caller instructed Plaintiff to state that he had specific illnesses and ailments, and guided Plaintiff regarding other information he should provide (such as his fictional treating physicians) to bolster his Camp Lejeune claim prior to the submission of his information to Defendants.

30. Following the submission of Plaintiff's pseudonym along with his coached—and false—information, the caller provided Plaintiff with retainer agreements and related documentation, through which Plaintiff agreed to "employ[] Watts Guerra LLC, Biltmore Law Group, PLLC, Law Office of Douglas Boxer, and Henson Fuerst, P.A. . . . as my attorneys to represent me in all claims, suits, or other matters arising out of and resulting from personal injuries suffered by me or decedent related to water contamination at Camp Lejeune." *See* Exhibit A.

31. Since receiving that retainer, Plaintiff continues to receive sporadic email requests from Defendants for him to sign the retainer. *See, e.g.*, Exhibit B.

32. Plaintiff did not sign the retainer agreement, and did not proceed any further with his pseudonym submission.

33. Following receipt of the retainer agreement for Plaintiff's pseudonym, Plaintiff

received at least 22 follow-up calls from Watts Guerra to sign the retainer.

34. Upon information and good faith belief, Defendants placed, or caused to be placed, materially identical phone calls to numerous other persons across the country in an effort to generate additional leads or claims for submission in the pending Camp Lejeune mass tort litigation.

35. Plaintiff did not give Defendants prior express consent to place, or cause to be place, artificial or prerecorded voice messages to his cellular telephone number.

36. Furthermore, Defendants placed their calls to Plaintiff's cellular telephone number for non-emergency purposes.

37. Upon information and good faith belief, Defendants placed their calls to Plaintiff's cellular telephone number voluntarily.

38. Upon information and good faith belief, Defendants placed their calls to Plaintiff's cellular telephone number under their own free will.

39. Upon information and good faith belief, Defendants had knowledge that they were using an automatic telephone dialing system, and an artificial or prerecorded voice, to place their calls to Plaintiff's cellular telephone number.

40. Plaintiff suffered actual harm as a result of Defendants' calls in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

41. Plaintiff also suffered actual harm as a result of Defendants' calls because Plaintiff was required to expend significant effort and time to determine the identity of the callers, which Defendants deliberately obfuscated.

42. Upon information and good faith belief, Defendants, as a matter of pattern and practice, use an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

43. Upon information and good faith belief, Defendants outsourced their outbound calling to Plaintiff, and the members of the classes defined below, to external marketing or lead generation vendors or call centers.

44. Upon information and good faith belief, Defendants knew that their external marketing or lead generation vendors were placing telephone calls to consumers for the purpose of generating leads or claims regarding Camp Lejeune, and accepted the benefits of those calls by distributing and signing retainer agreements with the persons called by Defendants' vendors or call centers.

45. Upon information and good faith belief, to the extent that Defendants retained third parties to deliver the solicitation messages and telephone calls on their behalf, Defendants cannot disclaim responsibility for these third parties' actions, because law firms are responsible for the content and methodology of their legal advertising, whether sourced in-house or externally.

46. Upon information and good faith belief, Defendants' vendors or call centers used a dialing system that could store a telephone number using a random or sequential generator or produce a telephone number using a random or sequential number generator.

47. Specifically, all of the subject telephone calls were automated and standardized, and the subject telephone calls were placed to Plaintiff's cellular telephone number not for the purposes of identifying and communicating with Plaintiff or another person associated with Plaintiff's phone, and instead were sent in massive quantity to seemingly random telephone numbers to identify *anyone* who could have a potential Camp Lejeune claim.

48. So, because those telephone calls were placed, or caused to be placed, at random intervals to persons such as Plaintiff who had no relationship with Defendants, no relationship with Camp Lejeune, and who did not provide any prior express consent to be contacted, Defendants likely used—or retained another to use—an automatic telephone dialing system to contact consumers nationwide in the effort to identify potential Camp Lejeune claimants, in violation of the TCPA.

## Class Action Allegations

49. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

> **Automatic Telephone Dialing System Class:** All persons throughout the United States (1) to whom Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, or Biltmore Law Group, PLLC placed, or caused to be placed, a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) by using the same dialing system used to contact Craig Cunningham, (4) from four years preceding the date of this complaint through the date of class certification.
>
> **Prerecorded or Artificial Voice Class:** All persons throughout the United States (1) to whom Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, or Biltmore Law Group, PLLC placed, or caused to be placed, a call, (2) directed to a telephone number assigned to a cellular telephone service, (3) in connection with which Watts Guerra, LLP, Watts Guerra, LLC, Henson Fuerst, P.A., Law Office of Douglas Boxer, or Biltmore Law Group, PLLC used an artificial or prerecorded voice, (4) from four years preceding the date of this complaint through the date of class certification.[1]

50. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51. Upon information and belief, the members of the Classes are so numerous that

---

[1] The Automatic Telephone Dialing System Class and the Prerecorded or Artificial Voice Class are collectively referred to as the "Classes."

joinder of all of them is impracticable.

52. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

53. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

54. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

55. Plaintiff's claims are typical of the claims of the members of the Classes.

56. As it did for all members of the Automatic Telephone Dialing System Class, Defendants placed, or caused to be placed, telephone calls to Plaintiff's cellular telephone number using a dialing system that could store a telephone number using a random or sequential generator or produce a telephone number using a random or sequential number generator, absent prior express written consent.

57. As it did for all members of the Prerecorded or Artificial Voice Class, Defendants placed, or caused to be placed, telephone calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice, absent prior express written consent.

58. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

59. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

60. Plaintiff suffered the same injuries as the members of the Classes.

61. Plaintiff will fairly and adequately protect the interests of the members of the

Classes.

62. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

63. Plaintiff will vigorously pursue the claims of the members of the Classes.

64. Plaintiff has retained counsel experienced and competent in class action litigation.

65. Plaintiff's counsel will vigorously pursue this matter.

66. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

67. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

68. Issues of law and fact common to all members of the Classes include:

    a. Defendants' conduct, pattern, and practice as it pertains to retaining third parties, agents, or vendors to place calls on their behalf for the purpose of generating leads or claims for the Camp Lejeune mass tort litigation;

    b. For the Automatic Telephone Dialing System Class, whether Defendants placed, or caused to be placed, telephone calls to cellular telephone numbers using a dialing system that stored or generated those telephone numbers with a random or sequential number generator, absent prior express consent;

    c. For the Prerecorded or Artificial Voice Class, Defendants' practice of placing, or causing to be placed, telephone calls to cellular telephone numbers using an artificial or prerecorded voice, absent prior express consent;

    d. Defendants' violations of the TCPA;

    e.  Whether Defendants acted willfully and knowingly in violating the TCPA; and

    f.  The availability of statutory penalties.

  69.  A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

  70.  If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

  71.  The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

  72.  The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

  73.  These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

  74.  The damages suffered by the individual members of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

  75.  The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

  76.  There will be no extraordinary difficulty in the management of this action as a class action.

77. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

### Count I
### Violation of 47 U.S.C. § 227(b)(1)(A)(3)

78. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-77.

79. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the Automatic Telephone Dialing System Class without consent.

80. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the Artificial or Prerecorded Voice Class without consent.

81. Specifically, Defendants placed, or caused to be placed, repeated telephone calls to be delivered to Plaintiff's cellular telephone number, and the cellular telephone numbers of the members of the classes, using (1) an automatic telephone dialing system—for the Automatic Telephone Dialing System Class; or (2) an artificial or prerecorded voice—for the Artificial or Prerecorded Voice Class—despite Plaintiff and the members of the classes never authorizing Defendants to do so, all for the purposes of identifying new leads or potential claims for the pending Camp Lejeune litigation.

82. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(b);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation phone calls to telephone numbers without obtaining prior express consent;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(b);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(b)(3)(C);

h. Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: July 20, 2023

*/s/ Alex D. Kruzyk*
Bryan A. Giribaldo
Alex D. Kruzyk
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Todd M. Friedman* (to seek admission *pro hac vice*)
Adrian R. Bacon* (to seek admission *pro hac vice*)
The Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd, Ste. 340
Woodland Hills, CA 91364
Tele: (323) 306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com

*Counsel for Plaintiff and the proposed classes*